**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**IN SEATTLE**

---

UNITED STATES OF AMERICA,      )
                               )
                Plaintiff,     )    CR No. 12-01RSL
                               )
        vs.                    )
                               )
TIMOTHY DORAN,                 )
                               )
                Defendant.     )

---

**PLEA HEARING**

---

**BEFORE THE HONORABLE ROBERT S. LASNIK**
**UNITED STATES DISTRICT COURT JUDGE**


**September 21, 2012**

APPEARANCES:

Andrew Friedman
Assistant United States Attorney
Representing the Plaintiff


Nicholas Marchi
Attorney at Law
Representing the Defendant

1         THE CLERK:  This is the matter of the United

2    States versus Timothy Doran, cause number CR12-001,

3    assigned to this court.  Counsel, please rise and make

4    your appearances for the record.

5         MR. FRIEDMAN:  Good afternoon, your Honor.  Andrew

6    Friedman for the United States.

7         THE COURT:  Hi, Mr. Friedman.

8         MR. MARCHI:  Good afternoon, your Honor.  Nick

9    Marchi on behalf of Mr. Doran.

10        THE COURT:  Hi, Mr. Doran and Mr. Marchi.  I have

11   in front of me a copy of a plea agreement and a

12   defendant's statement of facts for plea of guilty.

13     Victoria, do you have the original?

14        THE CLERK:  I do not, your Honor.

15        THE COURT:  Who has the original?  You have it,

16   Mr. Marchi?  That's fine.  Keep it down there.

17     Mr. Marchi, can you tell me a little bit about what

18   you have done to assure yourself that Mr. Doran is making

19   a knowing, voluntary and intelligent plea of guilty, and

20   how things transpired leading to today?

21        MR. MARCHI:  Your Honor, actually, I may -- I want

22   to make sure that Mr. Doran feels comfortable with today.

23   He has had some questions.  I would inquire if Mr. Doran

24   is prepared to go forward, or if he would like to have me

25   answer some more questions?  The court will give us a

1    little time to do that.  I just want to make sure that

2    Mr. Doran is prepared for today and he doesn't have

3    questions.

4            THE COURT:  Sure.  Have you got the original down

5    there?

6            MR. MARCHI:  I do.

7            THE COURT:  Is it signed yet?

8            MR. MARCHI:  Yes.

9            THE COURT:  By you?

10            MR. MARCHI:  And by Mr. Doran.

11            THE COURT:  And by Mr. Friedman?

12            MR. FRIEDMAN:  Yes.

13            THE COURT:  You have had a few meetings with

14    Mr. Doran.  He felt secure enough about it to sign it, but

15    he still has some lingering questions?

16            MR. MARCHI:  Exactly, your Honor.

17            THE COURT:  Mr. Doran, do you want more time with

18    Mr. Marchi, or do you want to ask me some questions?

19            THE DEFENDANT:  Actually, the questions that I

20    have are about my points regarding the length of time that

21    I'm going to be subject to spend in prison due to my

22    signing this.  You said you have a plea agreement.  I

23    haven't seen anything.  I have that statement of facts

24    that I read.

25            THE COURT:  This document that says "Plea

1  Agreement" on there, do you have that down there,

2  Mr. Marchi?

3          MR. MARCHI:  I do, your Honor.  As I indicated to

4  Mr. Doran when we met, the court may use the plea

5  agreement to advise him of some statutory language.  But

6  we have not signed a plea agreement.  This is an open

7  plea.

8          THE COURT:  I am a little confused.  When I said,

9  do you have the original down there, were you talking

10  about the statement --

11          MR. MARCHI:  I have the original statement, your

12  Honor.

13          THE COURT:  The defendant's statement of facts for

14  plea of guilty.  Do you also have the original plea

15  agreement?

16          MR. MARCHI:  I have a copy of a plea agreement

17  that was forwarded to Mr. Doran and his prior counsel, and

18  what was forwarded to me this morning, which counsel

19  forwarded to the court.

20          THE COURT:  But you have now had a chance to go

21  over this document with Mr. Doran?

22          MR. MARCHI:  We have discussed the plea agreement.

23  But there is no plea agreement in this case.

24          THE COURT:  We may not be talking about the same

25  thing.  It is not a plea bargain, in the sense that you

```
 1    have an agreed sentencing recommendation.  It is a plea
 2    agreement, to the extent that he is pleading guilty in a
 3    knowing, voluntary and intelligent way to an open
 4    recommendation; is that fair?
 5            MR. FRIEDMAN:  Your Honor, my understanding is
 6    Mr. Doran is not going to sign that agreement.  He is not
 7    entering into any agreement.  We generally provide the
 8    court --  That is basically the agreement we had offered.
 9    To the extent the court wants to know the maximum
10    penalties or the elements, it can help guide the court in
11    the colloquy.  But Mr. Doran is not entering into any
12    agreement.  Some of the provisions in the back,
13    specifically Paragraphs 8, 10 to 13, just wouldn't apply.
14    So it is really just a guide to the court in discussing
15    with Mr. Doran his rights, assuming he wants to go forward
16    with his plea.
17            MR. MARCHI:  Exactly.  It is an open plea, in
18    which we are not taking any part of the plea agreement.
19            THE COURT:  But you are not contesting that there
20    are facts sufficient to establish his guilt of the charged
21    crime?
22            MR. MARCHI:  And that's what the statement is.
23            THE COURT:  I have not done one of those before.
24            MR. FRIEDMAN:  Every once in a while a defendant
25    does it.  It is usually a different situation.  The court
```

1    is probably aware there is an issue about conflicts on

2    waivers of appeal.  Sometimes defendants respond by

3    treating the case this way.  It is rare.

4            THE COURT:  I still have to go over the rights

5    that Mr. Doran is giving up by entering a plea.  But

6    anything -- any paragraph that starts with "we agree" is

7    not being agreed to.  So we will strike those from --

8            MR. FRIEDMAN:  I don't think this document ever

9    gets entered in the docket.  It is for the court's

10   assistance.

11           THE COURT:  It is a guideline for me.  Got it.

12   With that understanding, Mr. Doran, are you ready to

13   proceed forward?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  Okay.  Stay standing.  My clerk is

16   going to actually swear you in, because you have to

17   truthfully answer these questions.

18   (At this time the deputy clerk swore in the defendant.)

19           THE COURT:  Mr. Doran, would you say your full

20   name for the record?

21           THE DEFENDANT:  Timothy George Doran.

22           THE COURT:  How old are you, sir?

23           THE DEFENDANT:  Forty-six.

24           THE COURT:  What is the highest grade you have

25   completed in your schooling?

1          THE DEFENDANT:  Tenth grade in high school, but I

2    have college after that.

3          THE COURT:  Some college?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  And do you read and write English?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you have any trouble understanding

8    written English?

9          THE DEFENDANT:  No.

10          THE COURT:  Are you under the influence of any

11    drugs or alcohol or anything that would cloud your

12    judgment or mind at this time?

13          THE DEFENDANT:  No.

14          THE COURT:  Do you take any strong prescription

15    medications that might make you foggy or not be of clear

16    mind today?

17          THE DEFENDANT:  No.

18          THE COURT:  Have you had any history of mental

19    illness in your past?

20          THE DEFENDANT:  No.

21          THE COURT:  I am going to go over the -- if you

22    could just place the plea agreement in front of Mr. Doran?

23          MR. MARCHI:  Yes, sir.

24          THE COURT:  We are using this as a guideline.  We

25    are not asking you to sign it, Mr. Doran.  But I do want

1    to make sure that you understand that you have the right

2    to have this matter -- I am looking at Page 1, Line 20 --

3    you have that right to have this matter tried before a

4    jury.  Do you understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  But you want to enter a plea of guilty

7    to the charge of failure to register and update

8    sex-offender registration, in violation of Title 18,

9    United States Code, Section 2250; is that right?

10             THE DEFENDANT:  Yes.

11             THE COURT:  And by entering a plea of guilty, you

12   waive any objections that you would have to the form of

13   the charging document.  Do you understand that?  What that

14   means is, you can't say, hey, they didn't charge the right

15   crime, or anything like that, once you enter a plea of

16   guilty.

17             THE DEFENDANT:  Yes.

18             THE COURT:  I am going to the top of Page 2 now.

19   This sets forth what the elements of the offense are, the

20   things that the government would have to prove beyond a

21   reasonable doubt to establish your guilt under this

22   particular United States Code.  First, that you were

23   required to register as a sex offender under federal law,

24   and in any jurisdiction in which you either reside or are

25   employed; second, that you traveled in interstate

1    commerce; and, third, that you knowingly failed to

2    register and update your sex-offender registration.  You

3    understand those are the elements of this crime?

4            THE DEFENDANT:  Yes.

5            THE COURT:  And the penalties are next.  Do you

6    understand that the statutory penalties for failing to

7    register and update sex offender registration are up to

8    ten years in prison, a fine of up to $250,000, and a

9    period of supervised release after prison of at least five

10   years, or up to life, and a special assessment of $100.

11   Do you understand those are the maximum penalties that you

12   face?

13           THE DEFENDANT:  Yes.

14           THE COURT:  And supervised release is a period of

15   time after you come out of a custody situation.  It is

16   sort of like probation, where you are subject to certain

17   restrictions and requirements.  Do you understand that?

18           THE DEFENDANT:  Yes.

19           THE COURT:  And if you are placed on supervised

20   release, and you violate one or more of those conditions,

21   you could be returned to prison to serve all or part of

22   the term of supervised release that was originally

23   imposed.  Do you understand that?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Technically, this could even result in

 1    you serving something longer than the statutory maximum,

 2    although I have actually never seen that happen.  It is

 3    technically possible.  Do you understand that?

 4            THE DEFENDANT:  Yes.

 5            THE COURT:  Also, there is no restitution in this

 6    case, but there could be a monetary penalty, such as a

 7    fine, in addition to the special assessment.  These

 8    monetary penalties would all be due and payable

 9    immediately after your sentencing.  Do you understand

10    that?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Now, these are very important here,

13    the bottom of Page 2 and the top of Page 3, the rights

14    that you waive or give up by pleading guilty.  I need to

15    know that you are doing this voluntarily and knowingly,

16    that is, you understand your rights, and you intend to

17    waive them voluntarily.  So on the top of Page 3, the

18    first one is, by pleading guilty, you obviously give up

19    the right to plead not guilty and persist or maintain the

20    plea of not guilty.  Do you understand what that right is?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Do you agree to give it up by pleading

23    guilty today?

24            THE DEFENDANT:  Yes.

25            THE COURT:  The next one is the right to a speedy

1    and public trial before a jury of your peers.  Do you

2    understand what that right is?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And do you agree to give it up by

5    pleading guilty today?

6              THE DEFENDANT:  Yes.

7              THE COURT:  The next one is the right to the

8    effective assistance of counsel at trial, including having

9    the court appoint an attorney for you.  Now, obviously,

10   you keep your court-appointed attorney going forward, but

11   you understand that if you decided to go to trial, he

12   would stay by your side and help you throughout the entire

13   trial?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And do you agree to give that up by

16   pleading guilty today?

17             THE DEFENDANT:  Yes.

18             THE COURT:  You also give up the right to be

19   presumed innocent.  You would be presumed innocent until

20   and unless the government was able to establish your guilt

21   beyond a reasonable doubt at trial.  Do you understand

22   that right?

23             THE DEFENDANT:  Yes.

24             THE COURT:  And do you agree to give it up by

25   pleading guilty today?

1          THE DEFENDANT:  Yes.

2          THE COURT:  The next one is the right to confront

3   and cross-examine witnesses against you at trial; that is,

4   these witnesses would have to come into the courtroom,

5   take the oath, sit on the witness stand, and, in your

6   presence, give testimony, and that your lawyer would have

7   a right to cross-examine these witnesses.  Do you

8   understand that right?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Do you agree to give it up by pleading

11  guilty today?

12         THE DEFENDANT:  Yes.

13         THE COURT:  The next is the right to compel or

14  subpoena witnesses to appear on your own behalf at trial;

15  that is, people could be forced to come in and testify if

16  you wanted them to.  Do you understand that right?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Do you agree to give it up by pleading

19  guilty today?

20         THE DEFENDANT:  Yes.

21         THE COURT:  The next one is you have the right to

22  testify at trial or remain silent at trial, at which trial

23  such silence could not be used against you in any way.  Do

24  you understand that right?

25         THE DEFENDANT:  Yes.

1          THE COURT:  And do you agree to give it up by

2     pleading guilty today?

3          THE DEFENDANT:  Yes.

4          THE COURT:  You also would have the right to

5     appeal any finding of guilt or any of the court's pretrial

6     rulings.  Do you understand that right?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And do you agree to give it up by

9     pleading guilty today?

10          THE DEFENDANT:  Yes.

11          THE COURT:  The next paragraph, 5, on Page 3,

12     talks about what the sentencing guidelines are.  And it

13     says that you understand and acknowledge at sentencing I

14     must consider the sentencing range calculated under the

15     sentencing guidelines, together with the other factors set

16     forth in Title 18, U.S. Code, Section 3553(a).  And then

17     it lists nine specific factors down there.  Have you

18     reviewed those factors, the nature and circumstance of the

19     offense, your history and characteristics, the need for

20     the sentence to reflect the seriousness of the offense,

21     et cetera?

22          THE DEFENDANT:  Yes.

23          THE COURT:  These apply to any sentencing.  In

24     addition to those, I would, of course, consider any

25     mitigating factors, aggravating factors presented by

1    either the government or by you.  Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And on the top of Page 4 it says, the

4    court will determine the applicable guideline range at the

5    time of sentencing based on input from U.S. Probation,

6    from the government and from your lawyer.  And then after

7    consideration of the guidelines, and the factors in 3553,

8    and any other arguments made to me, that I may impose any

9    sentence authorized by law up to that statutory maximum

10   that we talked about earlier.  Do you understand that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  And that I am not bound by any

13   recommendation regarding the sentence to be imposed, or

14   any calculation of the guideline range offered by either

15   the parties or by U.S. Probation, or by any stipulations

16   or agreements between the parties.  I get to decide what

17   the range is, I get to decide what the sentence is.  You

18   understand that?

19   (Short pause in the proceedings while defendant consults

20   with his attorney.)

21         THE DEFENDANT:  Yes.

22         THE COURT:  And if I give a sentence that you

23   don't like, that is not a ground for you to say, hey, I

24   want to withdraw my plea of guilty.  Do you understand

25   that?

1            THE DEFENDANT:  Yes.

2            THE COURT:  It says here in No. 6, you acknowledge

3    that nobody has promised you or guaranteed to you what the

4    sentence is that I will impose.  Is that true?

5            THE DEFENDANT:  Yes.

6            THE COURT:  And then it refers to a statement of

7    facts that the parties agree establish the facts in this

8    case, and establish the guilt of the defendant of the

9    charged offense.  Now, this refers to a document that you

10   have signed, along with Mr. Marchi, today, entitled

11   "Defendant's Statement of Facts for Plea of Guilty"; is

12   that right?

13           THE DEFENDANT:  Yes.

14           THE COURT:  And have you reviewed that with your

15   attorney?

16           THE DEFENDANT:  Yes.

17           THE COURT:  And is this the truth of what happened

18   here?

19           THE DEFENDANT:  Yes.

20           THE COURT:  And it indicates that you had been

21   previously convicted of a crime in the state of Washington

22   for which you are required to register as a sex offender

23   for life, but that in October of 2010, you moved out of

24   your previous Seattle address, where you had been

25   registered, to live in Vietnam, and then in March 2011,

1   you returned to the United States and lived at various

2   times in San Francisco, California; Williston, North

3   Dakota; and the Seattle, Washington area.  And from that

4   time, approximately August 2010, to your self-surrender in

5   December of 2011, you never updated any sex-offender

6   registration with King County, nor did you register as a

7   sex offender in any of the other jurisdictions in which

8   you resided.  Is that the truth?

9            MR. MARCHI:  Yes, your Honor.  The only correction

10   we would have is at Line 7, it should say "October 2010."

11            THE COURT:  Instead of August 2010?

12            MR. MARCHI:  Yes.

13            THE COURT:  Will you make that change on there?

14            MR. MARCHI:  I will, your Honor.

15            THE COURT:  And have Mr. Doran initial it.  With

16   that change, is that the truth, Mr. Doran?

17            THE DEFENDANT:  Yes.

18            THE COURT:  I would find that those facts do

19   establish Mr. Doran's guilt of the crime charged, and that

20   they meet the three elements; that he was required to

21   register as a sex offender, he traveled in interstate

22   commerce, and he knowingly failed to register and update

23   his sex offender registrations.

24        We are skipping 8, 9, 10, but I will go over No. 11.

25   Mr. Doran, on Page 6 it says you agree -- that you are

 1   entering into this plea agreement -- and by "plea

 2   agreement" I just mean entering a plea of guilty -- freely

 3   and voluntarily, without any threats or promises.  Is that

 4   correct, no one has threatened or promised you anything?

 5           THE DEFENDANT:  Yes.

 6           THE COURT:  Mr. Doran, let me ask you then, in

 7   regard to the crime charged of failure to register and

 8   update sex-offender registration, how do you plead today?

 9           THE DEFENDANT:  Guilty.

10           THE COURT:  All right.  I will find that the

11   defendant did knowingly and voluntarily enter a plea of

12   guilty, that he has stipulated to a statement of facts for

13   the plea of guilty that does establish from October 29,

14   2010, until his self-surrender on December 21, 2011, he

15   knowingly never updated his sex-offender registration,

16   either with King County or any of the jurisdictions in

17   which he lived; that he was required to do so by virtue of

18   this 1992 conviction of rape in the second degree in

19   Washington state, and he traveled in interstate commerce.

20      We will enter that finding of guilt, and we will take

21   the defendant's statement of facts for plea of guilty and

22   file that later on.

23      Mr. Doran, any questions at all about what we just did

24   here today?

25           THE DEFENDANT:  No.

1    THE COURT:  Now we are at the point where we will

2  set a sentencing date.

3    Mr. Friedman, at this point -- you had filed a

4  document in response to the motion to continue that talked

5  about what you would be relying on for your position at

6  sentencing.  Has anything changed in regard to that

7  document?

8    MR. FRIEDMAN:  No, your Honor.  I think the one

9  thing that I would add to that document is we indicated

10  that document was really, I think, responding more to the

11  requests for discovery, and saying, look, we have given

12  everything we have, and then enumerating portions of that

13  on which we would rely.  It is likely at sentencing, if we

14  are able to obtain a police officer from Vietnam to come

15  and testify, that we would also rely on that.  We do not

16  have someone lined up at this point.  I am not confident

17  we will get Vietnam to send someone.

18    THE COURT:  Right.  You also mentioned a number of

19  people who Mr. Doran allegedly spoke to about what

20  happened in Vietnam.  Are you planning to call live

21  witnesses at that hearing, or are you just going to go by

22  written statements or representations?

23    MR. FRIEDMAN:  I think, your Honor, in order for

24  the court to consider that fact, it would need to find by

25  a preponderance of the evidence that Mr. Doran committed

1    that murder.  I think to do that we would call those

2    witnesses so that they can be cross-examined.  There is a

3    fairly recent Ninth Circuit decision, I think called

4    McGowan, that limits our ability to rely on affidavits and

5    out-of-court statements on contested matters --

6            THE COURT:  I didn't know about that.  But I was

7    going to tell you, don't ask me to rely on anything other

8    than live witnesses.  When are you going to decide whether

9    you are going to actually do that or not?

10           MR. FRIEDMAN:  We would expect to call most or all

11   of the live witnesses referred to in that motion.  The

12   Vietnam issue depends on when and if we are told that we

13   can do that, or if someone will be available.

14           THE COURT:  Mr. Marchi, knowing that the

15   government will be calling some of these witnesses from

16   here -- let's assume that we are not going to get a police

17   officer from Vietnam, because that is a completely

18   different situation, how much time do you feel you need to

19   prepare for the sentencing?

20           MR. MARCHI:  Your Honor, there are a myriad of

21   discovery issues that are going to come up in the

22   sentencing stage.  Now, Mr. Doran and I --  As the court

23   is aware, I am essentially trying a murder case in a

24   sentencing hearing.  Possibly March, your Honor.  What was

25   disclosed to us on August 25th were additional

1    information, additional witnesses that we have not been

2    able to interview yet.   There are issues of how we contact

3    them.   The State Department provided two declarations from

4    two officers -- consulate officers from Vietnam, which we

5    have no contact information on.   That will have to be

6    sorted out.   Mr. Doran and I are very concerned that we

7    need the time to get these interviews done, plus get

8    interviews done in Vietnam that relate to this.

9         I understand that the government cannot compel the

10   Vietnamese government to provide statements and things

11   like that.   However, in what was provided to me on

12   August 25th, it does appear that there has been some sort

13   of investigation.   I point specifically, your Honor, to a

14   DNA -- I don't know if it is a report, but DNA testing

15   that was conducted.   I have no other information about

16   these DNA tests that were conducted, other than they may

17   be a match.   I have no idea where the DNA was found,

18   whether it was on the victim's body or things like that.

19        I understand that the government says it is difficult

20   for them to get information.   However, I note that this

21   was an Interpol request for information on Mr. Doran.   I

22   would ask that the government continue to supply us with

23   updates, as -- if they can do it in an expeditious nature,

24   so that we are not coming back in March saying, we are

25   simply not done.   I understand the government wants a set

1    date for a sentencing.  I can see their point of view.

2    But, also, my point of view is, I have to essentially

3    conduct an investigation into a murder case where it is

4    based on statements and internet reports.  That's kind of

5    where we are going to come from.

6          THE COURT:  I will not rely on internet reports.

7    You can be sure of that.  What we are really talking about

8    are American witnesses who will be testifying to things

9    that Mr. Doran allegedly said to them.  That's not that

10   complicated.  If you are talking about going over to

11   Vietnam and trying to look at a crime scene, that's

12   complicated.

13      If we end up over there, figuratively, not literally,

14   you will need more time for sure.  But if we end up with

15   just the government going with the statements Mr. Doran

16   allegedly made to other people, you just need time to

17   investigate that, interview those people, if you can, find

18   out whether they have impeachment matters to go into,

19   bias, prejudice and the like, and it is a different thing

20   completely.

21      Now, the government has a continuing responsibility

22   under Brady to provide all exculpatory information to

23   defense counsel, not just as to guilt or innocence, but as

24   to punishment.  I trust that Mr. Friedman and his office

25   will turn over everything that they get, not just the

1    stuff that helps, but the stuff that hurts, and that you

2    will be treated that way, I have no doubt about that.

3        Let's do this:  Let's set a sentencing date in

4    January.  If we are going on the U.S. witnesses, and what

5    Mr. Doran said to them, that should be enough.  If we

6    expand beyond that to forensics from Vietnam, a police

7    officer who is going to talk about the crime scene

8    investigation and the like, I will grant you an additional

9    continuance.

10       Victoria, I don't know if anybody left you any dates?

11           THE CLERK:  They did not, but I can contact Kerry.

12           THE COURT:  Do you have a January calendar there?

13   I think we should give ourselves -- how much time,

14   Mr. Friedman, a day?

15           MR. FRIEDMAN:  I think if it is just U.S.

16   witnesses, a half day would be enough.  If the court

17   wanted to be cautious, a day would make sense.

18           THE COURT:  Let's do a day.

19           THE CLERK:  A Friday?

20           THE COURT:  Yeah, let's do a Friday.  I think we

21   are not booked into then.  How about the second to the

22   last Friday?

23           THE CLERK:  January 18th.

24           THE COURT:  Okay.  Friday, January 18th.

25   Mr. Marchi, you look like you are busy that day?

1          MR. MARCHI:  No, your Honor.  While the government

2     says a day, it could be more than a day.  I think we would

3     alert the court that we may need additional time.

4          THE COURT:  At this point we don't know whether

5     you are going to be calling witnesses.

6          MR. MARCHI:  Exactly.  I anticipate calling

7     numerous witnesses.

8          THE COURT:  And that's why I gave a full day

9     instead of a half day.  You may need a full day yourself.

10    This is just a placeholder.  That's all this is, is just a

11    placeholder.

12      I just signed and will return to Ms. Harmon the CJA

13    authorization that has been hanging out there until we did

14    this.  I understand that you may need additional

15    authorizations, and you should feel free to pursue those

16    with, of course, proper justification.

17          THE CLERK:  9:00 a.m.

18          THE COURT:  9:00 a.m. on Friday the 18th.

19    Mr. Marchi, anything else you wanted to bring to my

20    attention today?

21          MR. MARCHI:  No, your Honor.  If there are other

22    issues that come up, we will request a status conference.

23          THE COURT:  I appreciate that.  Thanks.

24    Mr. Friedman, anything else?

25          MR. FRIEDMAN:  No, your Honor.

1          THE COURT:  Mr. Doran, anything you want to say to

2   me?

3          THE DEFENDANT:  No.

4          THE COURT:  Things are still good with Mr. Marchi

5   as your lawyer?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Good.  I'm glad that worked out.  We

8   will be adjourned.

9                      (Adjourned.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              **CERTIFICATE**

2

3

4

5

6

7

8

9            **I, Barry L. Fanning, Official Court Reporter, do hereby certify that the foregoing transcript is true and correct.**

10

11                              **S/Barry L. Fanning**

12                              _____

13                              **Barry L. Fanning**

14

15

16

17

18

19

20

21

22

23

24

25