UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

    Plaintiffs,

    v.

TIMOTHY GEORGE DORAN,

    Defendant.

Case No. C12-00001RSL

ORDER REGARDING SENTENCING

## I. INTRODUCTION

This matter comes before the Court on "Defendant's Memorandum," dkt. # 105, and "Government's Memorandum Re: Murder of Nguyen," dkt. # 106, following the evidentiary portion of Defendant's sentencing hearing in the above-captioned case. On July 16, 2014, the Court issued an Order requesting further briefing regarding the application of the relatedness principle to the facts of this matter. Dkt. # 107. The government and Defendant have submitted additional memoranda in response to the Court's Order. Having considered the parties' memoranda and supporting documents, the testimony and exhibits presented during the evidentiary hearing, and the remainder of the record, the Court finds the following:

## II. BACKGROUND

On September 21, 2012, Defendant pleaded guilty to failing to register and update sex

ORDER REGARDING SENTENCING

offender registration in violation of 18 U.S.C. § 2250, the only crime charged in the indictment.[1] Dkt. # 42; Dkt. # 43.  Defendant admitted that on or about October 29, 2010, he moved from Seattle, Washington, to Vietnam.  Dkt. # 43 at 2.  He returned to the United States in March 2011.  Id.  From October 2010 until December 21, 2011, Defendant did not update his sex offender registration as required under the Sex Offender Registration and Notification Act, 42 U.S.C. § 16901 *et seq.*  Id.

The parties agree that Defendant's total base offense level is 14 and the applicable sentencing range under the United States Sentencing Guidelines Manual ("Guidelines"), taking into account Defendant's criminal history category of II, is 18-24 months of imprisonment.  Dkt. # 105 at 2; Dkt. # 108 at 2-3.  The statutory maximum term is ten years of imprisonment.  18 U.S.C. § 2250(a).  The presentence report ("PSR") includes information regarding the death of Nguyen Thi Bich Ngoc[2] ("Ms. Ngoc") in Vietnam in 2011.  The government argues that the Court should impose an above-Guidelines sentence based on Defendant's alleged murder of Ms. Ngoc.  Dkt. # 60.  Defendant objects to the statements in the PSR concerning his alleged involvement in Ms. Ngoc's death.  Dkt. # 51.  The Court held an evidentiary hearing on March 22, 2013, April 1, 2014, and May 22, 2014, to resolve this dispute.  Dkt. # 64; Dkt. # 96; Dkt. # 100.  During the evidentiary hearing, the Court heard testimony from Vietnamese Detective Ngoc Tuan Hoang, Girlie Pineda, and David Williams.  Id.  The Court also admitted several exhibits into evidence.  Id.

---

[1] Defendant was convicted of Rape in the Second Degree in Pierce County Superior Court in 1992 for the violent rape of his ex-girlfriend.  Dkt. # 60-1 at 9-19.  He was sentenced to 89 months imprisonment.

[2] Although the government refers to this woman as "Bich Ngoc Thi Nguyen" or "Nguyen," dkt. # 106 at 2, the Court will refer to her as Ms. Ngoc throughout this Order.

ORDER REGARDING SENTENCING         -2-

### III. DISCUSSION

**A.    Standard**

In determining the appropriate sentence, the "sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited as to the kind of information he may consider, or the source from which it may come." United States v. Fitch, 659 F.3d 788, 797 (9th Cir. 2011) (internal quotation marks omitted); see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). The rules of evidence do not apply to sentencing. United States v. Chavaria-Angel, 323 F.3d 1172, 1175 (9th Cir. 2003). Thus, the Court may consider all relevant evidence, id., including hearsay, as long as there is some minimal indicia of reliability, United States v. Littlesun, 444 F.3d 1196, 1200 (9th Cir. 2006) (internal quotation marks omitted). Ninth Circuit law provides that "where a severe sentencing enhancement is imposed on the basis of uncharged or acquitted conduct, due process may require clear and convincing evidence of that conduct." Fitch, 659 F.3d at 797. Because Defendant has not been charged with Ms. Ngoc's murder and the consideration of this uncharged crime may have a disproportionate effect on Defendant's sentence relative to his failure to register, the government must demonstrate by clear and convincing evidence that Defendant killed Ms. Ngoc. Id.; United States v. Dare, 425 F.3d 634, 642 (9th Cir. 2005). The government has met this burden.

**B.    Findings**[3]

Defendant moved to Vietnam in October 2010. Dkt. # 43 at 2. In winter 2011, he began dating Ms. Ngoc. Ex. 25; Dkt. # 65 at 25-26. Ms. Ngoc also took care of his children occasionally. On the evening of March 5, 2011, Ms. Ngoc went out with a friend from work.

---

[3] The Court relies on the testimony of the witnesses and the exhibits admitted during the evidentiary hearing, as well as the exhibits attached to the parties' memoranda.

Ex. 25; Dkt. # 65 at 25. Some time after midnight, Ms. Ngoc received a call from Defendant and Ms. Ngoc's friend dropped her off at Defendant's house. Ex. 25; Dkt. # 65 at 25-26. The following day, March 6, 2011, Defendant called a friend in Vietnam from whom he had rented a motorcycle and told him that he was in trouble. Ex. 24; Dkt. # 65 at 35. Defendant explained that people had threatened him. Id.

Later that night, at or about 11:00 p.m., Defendant locked his house and left with his sons. Ex. 20; Dkt. # 65 at 33. He did not return.

Beginning on March 6, 2011, and continuing over the next two or three days, Defendant made many calls to David Williams, a friend in the United States. See Dkt. # 103 at 15, 18; Ex. 7. During these conversations, Defendant told Mr. Williams that he needed to leave Vietnam quickly because Ms. Ngoc "had gotten to him and he choked her out." Dkt. # 103 at 16. He told Mr. Williams that he killed Ms. Ngoc and hid her body in his house. Id. Notably, at no time during the more than fifteen phone conversations between Defendant and Mr. Williams did Defendant mention that he had been attacked or that he had killed Ms. Ngoc in self-defense. Id. at 17.

After talking to Defendant, Mr. Williams called the U.S. Consulate in Ho Chi Minh City, Vietnam, and reported that Defendant, a U.S. citizen, had injured a person in Vietnam and needed help. Ex. 7. Mr. Williams, relying on Defendant's statements, explained to the Consulate officer that Defendant needed to get his children out of the country before the local authorities learned about the incident. Id.; Dkt. # 103 at 18, 20-21, 23. However, when the officer at the U.S. Consulate called Defendant on March 6, 2011, and asked if he needed help Defendant responded that there must be some mistake because he did not need any help. Ex. 7. During later telephone conversations that day, Defendant denied hurting anyone, but told the Consulate officer that someone had broken into his home the night of March 5, 2011, and threatened his life and the lives of his children. Id. Defendant said he and his children needed to get out of the country as soon as possible. Id.

ORDER REGARDING SENTENCING            -4-

On March 7, 2011, Defendant went to the U.S. Consulate in Ho Chi Minh City to seek financial assistance to return to the United States. Ex. 8. He told the Consulate officer a similar, but slightly different version of events. He explained that his ex-girlfriend and her new boyfriend, an Italian man, threatened him and his children, but he did not want to involve the local authorities. Id. The officer told Defendant that obtaining funds through the Consulate would take time. Id. Defendant returned to the U.S. on March 9, 2011. Id.; Dkt. # 101 at 2.

The body of Ms. Ngoc was discovered on March 13, 2011, in a small closet above a bathroom in Defendant's house in Vietnam. Dkt. # 65 at 14-18, 27. An autopsy revealed that the cause of death was asphyxiation by strangulation and that Ms. Ngoc had been dead for at least eight days. Id. at 23-24. The autopsy also revealed two broken bones in Ms. Ngoc's neck, consistent with strangulation. Id. During their search of the house, Vietnamese police officers found a box of business cards with Defendant's name on them. Id. at 15. They also found children's bicycles and shoes at the house. Id.

Defendant's attorneys deny that Defendant had any involvement in Ms. Ngoc's death and argue that some unknown person killed Ms. Ngoc and hid her in his house after he left Vietnam.[4] Dkt. # 105 at 10-13. However, Defendant's statements to friends and family after he returned to the U.S. contradict this current position:

- Shortly after he arrived in the U.S. in March 2011, Defendant told his sister, Kathryn Doran, that he killed Ms. Ngoc in Vietnam. Dkt. # 106-4 at 3. He explained that she and a man came into his house in the middle of the night and attempted to hurt him and take his sons. Id. He told her he killed the man and strangled Ms. Ngoc. Id.

- Shortly after the police discovered Ms. Ngoc's body, Defendant exchanged emails with a teacher, Trinh Thi Thunga (who goes by "Nga"), in Vietnam. Ex. 28; Ex. 30. Defendant explained that he left quickly because an ex-girlfriend brought gangsters to his house on the night of March 5, 2011:

    NGA, U NEED TO UNDERSTAND THAT THIS WOMAN WAS CRAZY.

---

[4] Defendant was advised of his right to testify, but he chose not to testify during the evidentiary hearing. Dkt. # 103 at 4.

ORDER REGARDING SENTENCING          -5-

> WOULD NOT LEAVE US ALONE AFTER I BROKE IT OFF WITH HER. SHE PAID THE MAFIA TO FOLLOW US EVERY WHERE EVERY DAY. . . I ONLY PROTECTED MY BOYS THAT NIGHT SHE CAME TO MY HOUSE WITH THAT MAN TO KILL US.  SHE TOLD ME THAT WHEN THE MAN KILLED ME SHE WAS TAKING MY SONS TO SELL THEM. THAT I WOULD KNOW THE PAIN SHE FELT. . . I HAD NO CHOICE BUT PROTECT MY BOYS. . . I WANT HER PARENTS TO KNOW THE TRUTH ABOUT WHY THEIR DAUGHTER DIED. . . I'M NOT EVIL, I WAS PROTECTING MY SONS.

Ex. 30.

- During an online conversation with his children's former nanny, Nguyen Thi My Le, in mid-March 2011, Defendant explained

  > I CANT HERE & NEED TO TAKE RESPONSIBILITY FOR WHAT HAPPENED. PLZ UNDERSTAND I ONLY DEFENDED MY CHILDREN, I'M NOT EVIL.  I NEED TO TELL NGOC'S FAMILY WHY SHE DIED. IF SHE HAD NOT COME TO MY HOUSE WITH THE BOY THIS WOULD NOT HAVE HAPPENED.

  Ex. 31.

- In June 2011, during a Skype video conversation, Defendant told his ex-girlfriend, Le Hong Thi Trang, that he and Ms. Ngoc had a fight and she fell onto a glass dresser in the house, cut her face, and died.  Ex. 23.

- In fall 2011, Defendant told the woman taking care of his children, Girlie Pineda, that he killed Ms. Ngoc and the two men with her when they came into his house in the middle of the night.  Dkt. # 65 at 47-49.

Having considered the evidence set forth above, the Court finds that Defendant intentionally killed Ms. Ngoc.  There is no explanation for why these separate individuals in Vietnam and the United States who do not know each other would lie about Defendant's statements.  Furthermore, Defendant's defenses are not supported by the evidence presented. First, Defendant's argument that he killed Ms. Ngoc in self-defense, which he has since abandoned, does not ring true.  There is no evidence that Ms. Ngoc was accompanied by anyone the night that she went to Defendant's house.  In addition, Defendant's self-defense story evolved over time; he has told several versions of the events that took place the night of March 5, 2011.  Ex. # 8; Ex. # 30.  Second, Mr. Doran's argument that he was not strong enough or tall enough to lift Ms. Ngoc's body and place it in the closet above the bathroom lacks credibility

and is not supported.

Defendant challenges the Court's consideration of the facts set forth above based on due process concerns. Dkt. # 105 at 6-10. Specifically, he claims that the government's request for an extraordinary variance requires that the government prove beyond a reasonable doubt that Defendant killed Ms. Ngoc. Id. at 7. However, Defendant fails to provide any authority requiring this burden of proof and Ninth Circuit law mandates only that the government demonstrate by clear and convincing evidence that Defendant committed the murder of Ms. Ngoc. Fitch, 659 F.3d at 797; Dare, 425 F.3d at 642. Because the Court finds that the government has met this heightened burden of proof, Defendant's due process rights are not threatened by the Court's consideration of these facts.

**C.    Sentencing**

Having found by clear and convincing evidence that Defendant killed Ms. Ngoc the Court now addresses the extent to which it may consider this finding in fashioning the appropriate sentence. The Court's role in sentencing is to "impose a sentence sufficient, but not greater than necessary," to reflect the purposes enumerated in 18 U.S.C. § 3553(a)(2). 18 U.S.C. § 3553(a). Once the Court has determined the applicable Guidelines range, the Court then must consider the sentencing recommendations of the parties and whether the § 3553(a) factors support the recommended sentences. United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). "If a district judge 'decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.' " Id. (quoting Gall v. United States, 552 U.S. 38, 50 (2007)). As the Supreme Court has explained, "a major departure should be supported by a more significant justification than a minor one." Gall, 552 U.S. at 50. The sentence must be both procedurally correct and substantively reasonable. Carty, 520 F.3d at 993.

Based on the facts set forth above, the government seeks an upward variance[5] from the Guidelines range and asks the Court to impose the statutory maximum sentence of ten years followed by lifetime supervised release. Dkt. # 60 at 5. Defendant, in addition to presenting due process concerns, argues that the Court cannot consider the alleged murder because it is not related to the crime of conviction. Dkt. # 105 at 3-6. Defendant relies on the Tenth Circuit Court of Appeals' decision in United States v. Allen, 488 F.3d 1244 (10th Cir. 2007). In Allen, the defendant pleaded guilty to one count of possession of fifty or more grams of methamphetamine with intent to distribute. 488 F.3d at 1248. The statutory mandatory-minimum sentence was ten years of imprisonment and the defendant's Guidelines range was 120-135 months. Id. at 1249. Relying on its finding that the defendant was planning to sexually assault and murder a young girl, the district court imposed a sentence of 360 months. Id. at 1251-52. Even though the court correctly calculated the defendant's Guidelines range for the crime of conviction, it went on to calculate and rely on the Guidelines range that would have applied if the defendant had been convicted of criminal sexual abuse or attempt to commit criminal sexual abuse and murder. Id. at 1252.

The Tenth Circuit held that the sentence was substantively unreasonable because the court effectively sentenced the defendant for his unrelated threatened or potential conduct. Allen, 488 F.3d at 1259. The court found that the defendant's potential criminal conduct could not be considered in determining the applicable Guidelines range because it was not related to the offense of conviction. Id. at 1255. The court analyzed the sentence under the relatedness principle, which limits a district court's Guidelines sentencing calculations to calculations based

---

[5] "A 'variance' normally occurs when a judge imposes a sentence that is above or below the properly calculated final sentencing range based on the application of statutory factors enumerated in 18 U.S.C. § 3553(a)." United States v. Moschella, 727 F.3d 888, 893 (9th Cir. 2013). In contrast, "[a] 'departure' is typically a change from the final sentencing range computed by examining the provisions of the Guidelines themselves." United States v. Cruz-Perez, 567 F.3d 1142, 1146 (9th Cir. 2009). Unlike a variance, a departure is provided for by the Guidelines, not the factors in § 3553(a).

on conduct that is related to the crime of conviction. Id. The court of appeals, like the district court, found the defendant's threatened sexual conduct and murder could not be considered in determining the applicable Guidelines range because it was completely unrelated to his possession of drugs with intent to distribute. Id. The Tenth Circuit further determined that the facts did not provide any justification for an upward departure under the Guidelines. Id. at 1256-57. In the end, the court acknowledged that the district court could consider the defendant's threatened conduct in varying from the Guidelines range, but the court erred in the degree of weight it afforded to those facts. Id.

Here, the Court has determined that Defendant killed Ms. Ngoc in Vietnam under a clear and convincing standard. However, the Court is constrained in its consideration of this fact by the case law and the relatedness principle articulated in Allen and employed by the Ninth Circuit in Fitch. In Fitch, the defendant was convicted by a jury of multiple counts of bank fraud, fraudulent use of an access device, and money laundering. Fitch, 659 F.3d at 790. At sentencing, the district court found by clear and convincing evidence that the defendant murdered his wife and that her murder was the means he used to commit the crimes. Even though the applicable Guidelines range was 41-51 months, the court sentenced the defendant to 262 months of imprisonment. Id. The Ninth Circuit upheld the district court's upward departure under the Guidelines because the murder was related to the crimes of conviction. Id. at 795, 798.

As was the case in Allen, the Court finds that Defendant's murder of Ms. Ngoc is not related to his failure to register as a sex offender. Therefore, the Court may not and will not consider this uncharged conduct in determining the applicable Guidelines range. Nor will the Court consider this conduct grounds for an upward departure within the Guidelines scheme. However, the Court may and will consider Defendant's involvement in Ms. Ngoc's death when evaluating the § 3553(a) factors, particularly the history and characteristics of Defendant and the need to protect the public from further crimes of Defendant. United States v. Vanderwerfhorst,

ORDER REGARDING SENTENCING            -9-

576 F.3d 929, 934-37 (9th Cir. 2009) (upholding district court's variance from the Guideline range based on its consideration of uncharged conduct in the context of § 3553(a) factors); see Allen, 488 F.3d at 1259.  The Court's conclusion is bolstered by the Tenth Circuit's finding in Allen that "the district court's conclusions regarding [the defendant's] proclivities undoubtedly bear a logical relation to the sentencing factors set forth in 18 U.S.C. § 3553(a), most especially the need to protect the public from further crimes of the defendant." 488 F.3d at 1252-53.  The court emphasized that the district court erred not in considering the uncharged conduct, but in the weight it afforded this conduct.  Id. at 1258-62.

### IV. CONCLUSION

For all of the foregoing reasons, the Court finds by clear and convincing evidence that Defendant killed Ms. Ngoc in Vietnam.  The Court will consider the parties' arguments regarding the appropriate weight to give to this finding in the context of the factors identified in § 3553(a).

DATED this 29th day of August, 2014.

Robert S. Lasnik
United States District Judge