1                    UNITED STATES DISTRICT COURT

2                 WESTERN DISTRICT OF WASHINGTON

3                          AT SEATTLE

4    _____

5    UNITED STATES OF AMERICA, )   NO. CR12-001 RSL
                               )
6              Plaintiff,      )
                               )
7    vs.                       )   April 27, 2012
                               )   Seattle, Washington
8    TIMOTHY DORAN,            )   2:00 p.m.
                               )
9              Defendant.      )
     _____

10
            TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
11          BEFORE THE  HONORABLE ROBERT S. LASNIK
               UNITED STATES DISTRICT COURT JUDGE
12   _____

13
     For the Plaintiff:        MR.ANDREW FRIEDMAN
14                             Assistant United States Attorney
                               700 Stewart Street, Ste 5220
15                             Seattle, Washington 98101

16
     For the Defendant:        MR.ROBERT W. GOLDSMITH
17                             Attorney at Law
                               705 Second Avenue
18                             Seattle, Washington 98104

19

20
     Court Reporter:           Leslie A. Waltzer, CSR
21                             3641 North Pearl Street
                               Tacoma, WA 98407
22

23

         (Proceedings recorded by mechanical stenography;
24   transcript produced with aid of computer.)

25

1    (Defendant Present, in Custody)

2            THE CLERK:  All rise.  Court is again in

3    session, the Honorable Robert S. Lasnik presiding.

4            THE COURT:  Good afternoon.  Thank you.  Please

5    be seated.

6            THE CLERK:  Case CL12-001, *United States versus*

7    *Timothy Doran*.

8        Counsel, would you please make your appearances.

9            MR. FRIEDMAN:  Good afternoon, Your Honor.

10   Andrew Friedman for the United States.

11           THE COURT:  Hi, Mr. Friedman.

12           MR. GOLDSMITH:  Good afternoon, Your Honor.

13   Robert Goldsmith for Timothy Doran.

14           THE COURT:  Hi, Mr. Doran.

15       Okay.  I've got a request from Mr. Goldsmith, a

16   Motion to Withdraw as Counsel.  Mr. Goldsmith, I take it

17   we should talk about this outside the presence of

18   Mr. Friedman?

19           MR. GOLDSMITH:  You take that correctly, Your

20   Honor.

21           THE COURT:  Mr. Friedman, always nice to see you

22   for brief glimpses.

23           MR. FRIEDMAN:  Thank you, Your Honor.

24   (Mr. Friedman left the courtroom)

25           THE COURT:  So the courtroom is closed.  The

1    court reporter's notes shall be sealed from this point,

2    until I tell you otherwise.

3        All right.  You have the floor, Mr. Goldsmith.

4            MR. GOLDSMITH:  Well, Your Honor, I think the

5    relationship with Mr. Doran has reached the point where

6    we're basically not getting along, not communicating very

7    well.  We don't -- we disagree on a number of issues, and

8    I think we're kind of at a loggerhead at this point.

9            THE COURT:  Well, could I ask you what the

10   issues are?  Because some are more important than others.

11           MR. GOLDSMITH:  I realize that.  Well, I would

12   prefer if Mr. Doran would --

13           THE COURT:  Sure.  Mr. Doran?

14           THE DEFENDANT:  Yes, Your Honor.  I appreciate

15   the opportunity you gave me last time to try to work

16   things out with Mr. Goldsmith.  It's nothing personal.

17   Sometimes client and counsel just don't see eye to eye.

18       My concerns are with the severity of the charges that

19   the government's going to bring and the amount of -- the

20   amount of research and investigation that's going to be

21   needed to be done to be able to prove my innocence

22   against what they're alleging, which if I don't have it,

23   it's going to cost me my children and a very good chunk

24   of my life.  There's been pertinent vital information

25   that has been lost, because it wasn't gathered timely,

1    and I just feel that there definitely needs to be a lot

2    more time devoted to this case to be able to gather

3    everything to be able to present a proper and adequate

4    defense on Mr. Goldsmith's behalf.

5        He doesn't see eye to eye with me on that, and I

6    understand that, so I would -- I've made it no secret

7    from him.  We discussed it before that I've talked with

8    other lawyers to get second opinions, and I'd like to

9    just -- if we can just understand that it's not working

10    between us and be able to move on to someone else that's

11    going to be able to put in the time that's going to be

12    needed to do it.

13            THE COURT:  Are you intending to retain another

14    lawyer?

15            THE DEFENDANT:  No.  I don't have funds to be

16    able to do it.

17            THE COURT:  So why are you talking to other

18    lawyers if they're not going to handle your case?

19            THE DEFENDANT:  There's other lawyers that I've

20    asked second opinions for based on the information that I

21    received, and there's another lawyer that -- a couple of

22    other lawyers that have -- based on the information that

23    I've given them and the research that they've done into

24    the case, that they're extremely interested in taking the

25    case.  They're CJA attorneys that they've offered to

1    appoint themselves as counsel just as Mr. Goldsmith did.

2    Like I explained when I came before you in March,

3    Mr. Goldsmith was not appointed.  He appointed himself

4    when I turned myself in.

5            THE COURT:  I didn't know you had that power,

6    Mr. Goldsmith.

7            MR. GOLDSMITH:  I think there's a misconception.

8            THE COURT:  So who are the lawyers who want to

9    appoint themselves for you?

10           THE DEFENDANT:  Nicholas Marchi and Paula Olson

11    before had expressed interest.  She's too busy at this

12    point, but I've had several conversations with

13    Mr. Marchi, and he told me just on Tuesday that he would

14    be willing to take the case if he would be appointed.

15           THE COURT:  So are you saying that your -- the

16    communication between you and Mr. Goldsmith has gotten to

17    the point that you don't think you can trust him as your

18    lawyer anymore?

19           THE DEFENDANT:  I think that the communication

20    and the trust factor.  And it probably works on both

21    sides.  I mean, it's just to a point where we're now

22    in -- we butt heads too much on what I feel is important

23    for my defense and what Mr. Goldsmith feels is important

24    for my defense and -- but the things that I'm asking for

25    are things that hold all the weight to proving my

1    innocence in the allegations that the government is

2    bringing against me, so --

3           THE COURT:  Well, let's be clear about one

4    thing.  When you say the allegations the government is

5    bringing against you, are you talking about the crime

6    you're charged with, or are you talking about the stuff

7    over in Vietnam?

8           THE DEFENDANT:  The stuff over in Vietnam, yes,

9    sir.  Like I said before, if it was just the initial

10   indictment charge, I would have pled guilty to that back

11   in January when I first came to court, and -- and we both

12   know that is not the government's case.

13          THE COURT:  And I take it, Mr. Goldsmith, that

14   your -- part of the problem here is you're saying, "Look,

15   the government can't prove what happened in Vietnam, and

16   the judge is more likely to consider the crime that's

17   here and what you've pled to, and we should focus our

18   attention on that"?

19          MR. GOLDSMITH:  I have given advice along that

20   line, not inconsistent with that.

21          THE COURT:  I don't know where you think --

22   Mr. Goldsmith already asked for funds for an investigator

23   to look into some of this, and I almost didn't approve

24   that, but I approved -- or what did I approve,

25   Mr. Goldsmith?  A couple of thousand dollars?

1          MR. GOLDSMITH:  Eight hundred initially, and

2     then you approved another thousand.

3          THE COURT:  And that's it.  I'm not going to

4     approve money for somebody to go over to Vietnam and do

5     investigations and stuff like that.

6          THE DEFENDANT:  I understand that.

7          THE COURT:  So I don't know what you expect your

8     lawyer to do that you're not paying for and that the --

9     you know, that I control the valve on how far this valve

10    gets opened and this -- you know, this is not going to be

11    a trial about what happened over there.

12         THE DEFENDANT:  I understand it's not going to

13    be a trial about what happened over there, but the

14    government is going to bring all this evidence or what

15    they feel is their evidence to you at sentencing to try

16    to enhance my sentence, and if I don't have the right to

17    be able to gain the information of the evidence to be

18    able to disprove -- they have a very one-sided view of

19    what -- the picture that they have of what happened, and

20    it is entirely not that way.

21         I hope you're going to understand what I'm going to

22    say right now.  I've told Mr. Goldsmith from the very

23    beginning the version of what happened over there, and I

24    understand that in his line of work he gets people that

25    sit across the desk from him every single day and lie

1    about, "I didn't do this.  I'm innocent."  All I want is

2    I want the information and the evidence that is not that

3    hard to gather to be gathered before I enter a plea and

4    hope that it -- that if it hasn't been gained in the last

5    120 days, that it's going to be gained in the next 90

6    days.

7        I just -- I'm going to lose my children and -- and my

8    life and -- and be -- and be hung with this crime over

9    there that the government has only one side of it.

10    There's already enough people that have come forward that

11    have said the complete other side of it, and all I want

12    is -- is to be able to show that to you so that you can

13    understand.

14            THE COURT:  What do you mean by "show"?  What

15    steps did you want Mr. Goldsmith to take that he didn't

16    take?  I mean, are you talking about getting witnesses,

17    or are you talking about getting records?  You don't have

18    to tell me the facts --

19            THE DEFENDANT:  Records, yes.

20            THE COURT:  Records.  Okay.  Records that exist

21    over there?

22            THE DEFENDANT:  Over there and over here.  But

23    the records that exist over here were lost for a better

24    lack of --

25            THE COURT:  Okay.  All right.  That's enough.

1          THE DEFENDANT:  But it's not that they can't be

2     regained.  It's just --

3          THE COURT:  All right.

4          THE DEFENDANT:  -- I have a lot of

5     questions about --

      (The Defendant and his Counsel conferred off the record.)

7          THE COURT:  Press that little button on the

8     microphone there.

9       Mr. Goldsmith, I've heard from Mr. Doran.  Is there

10    anything you want to say?

11         MR. GOLDSMITH:  I think one of our biggest

12    disagreements is the timing of certain actions that I

13    take.  That's been -- I'm sure Mr. Doran -- correct me if

14    I'm wrong.  It's a timing thing.  As you've heard now,

15    the bigger issue is the sentencing hearing, and a lot of

16    what we want to go after really has to do with getting

17    reports, so to speak, and other material that's pertinent

18    to that sentencing.  Until such time as the sentencing is

19    scheduled, I'm not sure I can subpoena things or make

20    that kind of motion to this Court to get those things,

21    because it's premature, and that's been our disagreement.

22         THE COURT:  And that's what I figured.  And it

23    is premature.  What you're doing is you're saying to me,

24    "I'm not going to plead guilty until I get everything I

25    need to defend myself at sentencing," and from where I'm

1    sitting, that's backwards.  If you really want -- if

2    you're really not contesting the crime, plead guilty to

3    the crime.  I'll set a sentencing date out there.  It

4    gives you something to work towards.  If you need

5    additional time, and you make a showing of why you need

6    additional time, I continue the sentencing, and we talk

7    about what we need for the sentencing.

8         But right now we're talking about trials, we're

9    talking about trial dates, we're talking about witnesses

10   subpoenaed to prove the case against you, and as long as

11   you continue to jack around the United States Attorney's

12   Office by not pleading guilty and firing your lawyer and

13   causing continuances and things like that, you're just

14   spinning your wheels.

15            THE DEFENDANT:  And, Your Honor, I don't want it

16   to seem like that.

17            THE COURT:  But that's what it seems like.

18            THE DEFENDANT:  But it is not that at all.  Like

19   I stated in the motion that I wrote up and the letter

20   that I -- I gave to Mr. Goldsmith, I do not want it to

21   seem that I'm wasting the Court's time.  All I'm trying

22   to do is gather the evidence that -- the evidence was

23   here, okay?  And the main problem that I have is that the

24   evidence was here, and -- and I gave him access to be

25   able to get the evidence, and he didn't do it for three

1    weeks.  And then it was my fault, because I made a phone

2    call requesting somebody else to retrieve it on the FDC

3    phone, and it was gone the next day.

4         So all I'm asking is that the information -- it

5    proves everything that I'm saying, and there's --

6    there's -- he's already submitted a subpoena for the

7    other information, but the government agency that he

8    submitted the subpoena is blocking it, so I asked for you

9    to write a letter.  They can't block a judge.  They can

10   block a lawyer, but they can't block a judge.

11        If I don't have this and the prosecution comes in and

12   paints this horrible picture that they're going to paint

13   of me, then if I don't have evidence to be able to show

14   that that's not the case, then you're going to slam me,

15   because you think that I wasted the Court's time, and

16   that I jerked around the prosecutors, and that's not what

17   it is, Your Honor.  Not at all.

18        I'm fighting for my life here.  I'm fighting for the

19   fact that I'm a father.  It's been 15 years since I was

20   released from prison, and I don't have anything more than

21   a traffic ticket.  I'm a father.  I'm not an ex-con.  I

22   don't pose a threat to anybody in any way, shape or form,

23   and all I'm asking for is you to understand that I'm

24   fighting to be able to prove that.

25             THE COURT:  Well, all I ask you to understand is

1    that you may not be in the best position to know how to

2    best handle this, and you should trust the people who

3    have the expertise in this area.  Okay?

4         THE DEFENDANT:  Can I ask you one question,

5    which is extremely important?  How do you know about the

6    issue in Vietnam?

7         THE COURT:  Because when Mr. Goldsmith made a

8    request for these funds, I needed to know what is this

9    about.

10        THE DEFENDANT:  Really?  Because Mr. Goldsmith

11   has told me the whole time that you knew nothing about

12   this, and when I wanted to raise issues about being able

13   to get information over there, he told me never to tell

14   you anything about that.  That's why it's such a very

15   huge surprise, a slap in the face to me today.  And when

16   I --

17        THE COURT:  Well, when there's a request for

18   funds of this nature, I have to know what is this all

19   about.

20        THE DEFENDANT:  I understand that, Your Honor.

21   I completely understand that.  But I've asked repeatedly

22   about -- about what information -- there's information

23   that the prosecutors now have that I only talked with him

24   about.  There are things that I've asked him to do, and

25   he has refused to do it.  There are threats that -- we

1    might as well just -- would you like to read the motion

2    that I have?

3            THE COURT:  Not really, no.

4            THE DEFENDANT:  Not at all?

5            THE COURT:  Yeah.

6        Okay.  I'm going to give you a new lawyer.  And, you

7    know, I don't know where we're headed on this, but we're

8    going to keep the trial date, and then we'll see your new

9    lawyer come in and -- what's the trial date now?  June

10   4th?

11           THE CLERK:  June 4th.

12           THE COURT:  And if your new lawyer -- we can --

13   Kerry, why don't you call over to Natalie?

14       Do you see any reason, Mr. Goldsmith, why Mr. Marchi

15   couldn't be the lawyer?

16           MR. GOLDSMITH:  I don't know him, so --

17           THE COURT:  He's a good guy.

18           MR. GOLDSMITH:  It's news to me that he was

19   contacted, so I don't know what was said.

20           THE COURT:  Okay.  We'll call Natalie and the

21   CJA people, and Mr. Goldsmith will be allowed to withdraw

22   once we have a new lawyer appointed for you.

23       Kerry, you want to bring Mr. Friedman back in?

24           MR. GOLDSMITH:  Your Honor, I did submit a

25   proposed order with that motion.

14

1          THE COURT:  I've got it right here.

2    (Mr. Friedman returned to the courtroom)

3          THE COURT:  We're back on the record, and

4    Mr. Friedman has re-entered the courtroom.

5          Mr. Friedman, I believe there is a breakdown in the

6    attorney-client relationship between Mr. Doran and

7    Mr. Goldsmith, and that Mr. Goldsmith's request with

8    Mr. Doran's concurrence I am allowing withdrawal by

9    Mr. Goldsmith, and have signed an order to that effect.

10         I am not changing the trial date of June 4th, and

11   when we get a new CJA lawyer on board, that person

12   should -- if we need a status conference, we'll have a

13   status conference.

14         You know, I don't think I'm speaking out of school

15   when I tell you that Mr. Doran reiterated that it's not

16   his intention to cause undue expense, delay, et cetera.

17   That he's never been talking about the issue of guilt or

18   innocence; he's talking about the issue of punishment and

19   sentencing.  So just for your edification, not to worry

20   about gearing up the witnesses just yet, but we'll wait

21   until there's a new lawyer on board.

22         MR. FRIEDMAN:  Thank you, Your Honor.

23         THE COURT:  All right.  Anything else?

24   Mr. Goldsmith, thank you for your service on the case.

25         MR. GOLDSMITH:  Thank you, Your Honor.

15

1            THE COURT:  Anything else, Mr. Doran?

2            THE DEFENDANT:  No, sir.

3            THE COURT:  Okay.  We'll be adjourned.

4            (End of Proceedings)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           C E R T I F I C A T E

2       STATE OF WASHINGTON)
                            ) ss.
3       County of King      )

4            I, the undersigned Notary Public in and for the

5       State of Washington, do hereby certify:

6            That the foregoing verbatim transcript of

7       proceedings was transcribed under my direction; that the

8       transcript is a full, true and complete transcript of

9       the testimony of said witness, including all questions,

10      answers, objections, motions and exceptions;

11           That I am not a relative, employee, attorney or

12      counsel of any party to this action or relative or

13      employee of any such attorney or counsel, and that I am

14      not financially interested in the said action or the

15      outcome thereof;

16           That I am herewith securely sealing and digitally

17      signing this transcript and delivering the same via

18      electronic filing to the Clerk of the Court.

19           IN WITNESS WHEREOF, I have hereunto set my hand and

20      affixed my official seal this 21st day of December,

21      2014.

22

23
                             /S/ Leslie Waltzer
24                           Notary Public in and for the State
                             of Washington, residing at Issaquah
25

CATHERINE M. VERNON & ASSOCIATES COURT REPORTERS, LLC
3641 North Pearl Street, Tacoma, WA 98407  (253) 627-2062